UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | Case No. CR414-005 |
| LILLIE MAE EUBANK and | ) | |
| CARL EVAN SWAIN | ) | |

## REPORT AND RECOMMENDATION

Carl Evan Swain and his sister, Lillie Mae Eubank, face trial for the murder of Eubank's husband. Doc. 101. Swain wants to exclude the statements he made to two FBI agents following his arrest in Alabama. He thus moved for and the Court granted him a *Jackson-Denno* hearing.[1] Doc. 215, *as amended*, doc. 223; doc. 234 (hearing Minute Order). There counsel stipulated to the accuracy of the transcript reflecting Swain's interview by those agents.[2] Doc. 215-1 (interview transcript). That interview occurred after Eubank confessed to law enforcement that she

---

[1] *Jackson v. Denno*, 378 U.S. 368, 380 (1964) ("A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined."); *see Colorado v. Connelly*, 479 U.S. 157, 167 (1986) (explaining that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'").

[2] The parties did note a minor discrepancy not relevant here.

and Swain arranged for Swain to beat her husband to death with a baseball bat. MJ413-093, doc. 13 (arrest warrant application); doc. 174-1 at 14-18. This Court had issued Swain's arrest warrant upon another FBI agent's probable cause showing that Swain and Eubank conspired to murder her husband. MJ413-093, doc. 13 (arrest warrant application); doc. 15 (arrest warrant for "Murder in violation of Title 18, United States Code, Section 1111(b)"). He thus was in custody during the ensuing interview, where the agents made it clear to him that he would be sent to Georgia to face the murder charge. Doc. 215-1 at 1-3.

No other evidence was taken at the *Jackson-Denno* hearing on Swain's motion, so its resolution depends exclusively on the audio-recorded statements made during the interview. At the commencement of the interview, FBI Agent Wayne Gerhardt administered the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Doc. 215-1 at 1. Swain said he understood his rights. *Id.* And even though Swain shortly thereafter signed a *Miranda* waiver form, doc. 215-1 at 1, 3; doc. 215-2 (the form),[3] he now says that his statements to the agents were *involuntary*. Why? Because after Agent Gerhardt read him his *Miranda*

---

[3] Swain does not challenge the legal sufficiency of the *Miranda* warnings on that form.

2

rights, Swain asked: "The thing is *if I needed* a lawyer, how am I going to be able to get one appointed to me that quickly?" Doc. 215 at 1-2 (quoting doc. 215-1 at 1) (emphasis added). Gerhardt's response, Swain contends, rendered his implied agreement to keep talking (and thus waive his right to remain silent) involuntary:

> Well, the court could appoint one to you, um, honestly at that point we take you over to the Marshals Service and, and, and at that point you would be appointed counsel. The question is whether or not we can sit down with you here again. *It would probably be back, once you get back to Georgia, before, before someone can talk to you.*

Doc. 215 at 2 (Swain's brief quoting the interview transcript, doc. 215-1 at 2 (emphasis by Swain)). Swain's reasoning as to how those words coerced or tricked him into speaking:

> Here, the *Miranda* warning was tainted by the agent's response that Swain would not receive a lawyer until he was turned over to the Marshal's Service. This "if and when we turn you over to the Marshals" type response does not comply with *Miranda* and differs on the facts from the Supreme Court's decision in *Duckworth v. Eagan,* 492 U.S. 195; 109 S. Ct. 2875 (1989). The waiver was inadequate and misleading; as a result, Swain's statement was not in fact voluntary and should be excluded.

Doc. 215 at 3-4.[4]

---

[4] Here is the surrounding context of the agent's exchange with Swain:

> Gerhardt: [U]m, before we get started, like I told you in the car, you've got certain rights and, um, and what I what I want to do before we talk to you

3

> today is I'm going to go over your rights. You've been arrested before, haven't you?
>
> Swain: Yes sir.
>
> Gerhardt: Okay. So you're familiar with what your rights are but still I'm going to review them with you. And I'm going to read them out loud and then I'm going to give you a chance to review them. Before we can ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed to you before any questioning if you wish. If you decide to answer questions now without a lawyer, you have the right to stop answering at any time. Do you understand your rights?
>
> Swain: Yes sir.
>
> Gerhardt: Okay. Do you want to talk to us today?
>
> Swain: The thing is if I needed a lawyer, how am I going to be able to get one appointed to me that quickly?
>
> Gerhardt: Well, the court could appoint one to you, um, honestly at that point we take you over to the Marshals Service and, and, and at that point you would be appointed counsel. The question is whether or not we can sit down with you here again. It would probably be back, once you get back to Georgia, before, before someone can talk to you.

Doc. 215-1 at 1-2. Swain then replied: "Now I've got a major question there." *Id.* at 2. He then asked the agents how he would ultimately get back to Jasper, Alabama, *id.*, where he had been arrested. WG replied: "Well, I don't know how you got there in the first place, Carl," and the exchanged drifted off into an irrelevant area (Swain said he'd biked from one point to another, etc.). *Id.* at 2. Even at that, WG reiterated that he did not know what was going to happen to Swain, *id.*, then paused to ensure that Swain still wanted to waive his *Miranda* rights:

> Gerhardt: So let me just clarify, you want to go on and waive your rights and talk to us at this time?
>
> Swain: I will talk to you as much as I can.
>
> Gerhardt: Okay, well - let me do this. What I'm doing to ask you to do is sign

4

Swain's motion is baseless. Agent Gerhardt truthfully and accurately answered Swain's "lawyer" question, explaining that any request for appointed counsel would be addressed by the court, a process that would entail some delay and, hence, necessarily preclude an interview at that time. After this explanation, Gerhardt even took pains to "clarify" whether Swain wanted to "waive [his] rights and talk to us at this time." Doc. 215-1 at 3.

The agent did not deceive Swain in any way about the nature of his rights or the consequences of waiving or asserting them. *Duckworth*, the case Swain seeks to distinguish, *negates* his argument. That opinion's opening paragraph:

> Respondent confessed to stabbing a woman nine times after she refused to have sexual relations with him, and he

---

your name right there. Thank you. Just for the record 11:20 is what the time we signed the consent form.

Swain: Is that what that says there?

Gerhardt: Well that's 11:19 is the time that you agreed to consent. I don't have the best handwriting do I Carl?

Swain: (Laughs). Well I understand what you wrote. Okay I see, I see.

Gerhardt: Okay. The time you actually . . .

Swain: Yeah, yeah, that one thing that looked like a four is actually a "A".

*Id.* at 3.

5

> was convicted of attempted murder. Before confessing, respondent was given warnings by the police, which included the advice that a lawyer would be appointed "if and when you go to court." The United States Court of Appeals for the Seventh Circuit held that such advice did not comply with the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). We disagree and reverse.

*Duckworth*, 492 U.S. at 197. After observing that "it must be relatively commonplace for a suspect, after receiving *Miranda* warnings, to ask *when* he will obtain counsel," the Court noted that "*Miranda* does not require that attorneys be producible on call." *Id.* at 204 (emphasis in original). Where, as here, "the police cannot provide appointed counsel[ ] *Miranda* requires only that the police not question a suspect unless he waives his right to counsel." *Id.* Swain, like the suspect in *Duckworth*, "did just that." *Id.*

Gerhardt's *Miranda* warning to Swain did not even contain an erroneous, diversionary qualifier like "if and when you go to court":

> Gerhardt. Okay. So you're familiar with what your rights are but still I'm going to review them with you. And I'm going to read them out loud and then I'm going to give you a chance to review them. Before we can ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during questioning. If you cannot afford a lawyer, one will be

6

> appointed to you before any questioning if you wish. If you
> decide to answer questions now without a lawyer, you have
> the right to stop answering at any time. Do you understand
> your rights?
>
> Swain: Yes sir.

Doc. 215-1 at 1. Nor can Gerhardt's post-warning, truthful response to Swain's "what if I need a lawyer?" question -- that the court would appoint one for him -- in any reasonable sense be said to mislead or intimidate Swain to the point of rendering his subsequent statements involuntary. Indeed, it did not even enter the "police-ploy zone" permitted by the case law.[5]

Swain's amended motion (doc. 223) is likewise baseless. He does not want his criminal history, as alluded to elsewhere in the

---

[5] As another court recently reminded:

> "Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda's* concerns." *See Illinois v. Perkins*, 496 U.S. 292, 297, 110 S. Ct. 2394, 110 L.Ed.2d 243 (1990); *Frazier v. Cupp*, 394 U.S. 731, 739, 89 S. Ct. 1420, 22 L.Ed.2d 684 (1969) (holding that police misrepresentation of facts, while relevant, was insufficient to render an otherwise voluntary confession inadmissible).

*Fundaro v. Curtin*, 2015 WL 357012 at *7 (E.D. Mich. Jan. 26, 2015); *see United States v. Lall*, 607 F.3d 1277, 1285 (11th Cir. 2010) (while police misrepresentations about the *legal* consequences of confessing are "likely to render a suspect's confession involuntary," a mere "misrepresentation of fact" about the nature and strength of the government's evidence is "not enough to render a suspect's ensuing confession involuntary").

interview (doc. 215-1 at 1 ("You've been arrested before, haven't you?"); *id.* at 17 ("You do have a battery charge"), mentioned at trial. Doc. 215 at 4; doc. 223 at 1-2. He also does not want the jury to hear one of the interrogating FBI agents express his belief about Swain's involvement in the murder. Doc. 223 at 2; *see also* doc. 215-1 at 17 ("Well, Carl let me tell what I think happened. . . ."). But Swain is, as the government correctly points out, free to object *on evidentiary grounds at trial*. *See* doc. 219 at 9 (the prosecution wants the jury to hear the audio version of the interview, "and leaves it to the sound discretion of the trial court to decide about any redactions before the recording is played to the jury.").

Accordingly, Carl Evan Swain's *Jackson-Denno* motion, doc. 215, *as amended*, doc. 223, should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this 10TH day of February, 2015.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

8